IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT S. SILVERMAN,

      Plaintiff,

  v.

CHINA NATIONAL NATIVE PRODUCE &
ANIMAL BY-PRODUCTS IMPORT &
EXPORT CORPORATION, CHINA
NATIONAL FIREWORKS COMPANY, LTD.,
also known as KWONGYUEN HANGKEE
COMPANY, LTD., RIMCOR, INC., SAM
AND ARLENE LAU, trading and doing
business as CHINA NATIONAL FIREWORKS
COMPANY, LTD. also known as
KWONGYUEN HANGKEE COMPANY,
LTD.,

      Defendants.

**06cv1710 LEAD**
ELECTRONICALLY FILED
*Consolidated with Civil Nos. 06-1711 & 06-1712*

### MEMORANDUM OPINION

**February 12, 2007**

    **Introduction.**

These consolidated cases present complicated procedural and jurisdictional issues involving serious and permanent injuries to a Pennsylvania resident, a multi-million dollar Pennsylvania state court judgment entered against a corporation owned by a foreign sovereign nation, the validity of state court judgments against a foreign sovereign and/ or its agents or instrumentalities in light of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, removal to federal court of the original action and two Pennsylvania Writs of Revival of judgment under the removal statutes, 28 U.S.C. §§ 1441-1453, and the weighing of important federal and state interests, giving appropriate deference to a state court judgment in order to

foster comity between the respective judiciaries.

Defendant raises a number of interesting jurisdictional, substantive and procedural defenses to revival of the judgment and to the validity of the underlying judgment itself. Without expressing an opinion, some of these defenses may have arguable merit. Before getting to these matters, however, there is a thorny threshold issue: are defendant's notices of removal timely under the removal statutes? If not, then defendant's jurisdictional, substantive and other procedural challenges to the state court judgment must be left to the wisdom of the state courts in which the judgment was rendered.

After careful consideration of plaintiff's motion to remand (doc. no. 16), defendant's response thereto, the briefs in support and in opposition to remand, the notices of removal and the state court records, the Court holds that all of the notices to remove are untimely, and will therefore remand the original action as well as the revival proceedings to the Court of Common Pleas of Lawrence County.

**Background.**

In 1995, plaintiff Robert S. Silverman filed suit against China National Native Produce & Animal By-Products Import & Export Corporation (which inexplicably, but thankfully, refers to itself as "Tushu," a convention the Court will follow) and other defendants in the Court of Common Pleas of Lawrence County, Pennsylvania, alleging that plaintiff, a professional fireworks operator, sustained severe, permanent injuries while attempting to discharge a 10 inch aerial fireworks shell at a fireworks show in Annapolis Maryland on the 4th of July, 1994, when the shell detonated prematurely while still in the mortar tube. Plaintiff alleged that Tushu manufactured and distributed the defective aerial shell.

Eventually, the other defendants reached settlement but the case against defendant Tushu continued. Tushu did not answer, appear or defend the suit, and in August 2000, the state court entered a judgment in the amount of $4,602,000, following a judicial proceeding. Tushu characterizes this as a "default judgment"; plaintiff disputes this characterization and states that there was a non-jury trial in May 2000 before a Judge of the Court of Common Pleas of Lawrence County, who considered evidence before rendering his award and entering judgment of $4,602,000. For purposes of deciding the motion to remand, whether the judgment is properly characterized as a "default judgment" is not material.

**Civil Action No. 06-1710.** At Civil Action No. 06-1710, Tushu filed a Notice of Removal of the "entire action" from the Court of Common Pleas of Lawrence County, Pennsylvania to this Court, asserting that the $4,602,000.00 judgment entered against Tushu by the Court of Common Pleas on May 29, 2001, at that court's docket no. 10639-1995, is removable pursuant to this Court's jurisdiction over actions against foreign states (which includes agents and instrumentalities of foreign states, as Tushu apparently is or was at relevant times), 28 U.S.C. §§ 1330(a) and 1603(a) and (b), and 28 U.S.C. § 1446(a) of the removal statutes.

Tushu concedes in its Notice of Removal that it "received a copy of the Amended Complaint on or about February 6, 1996 at its offices in Beijing, China." Notice of Removal (doc. no. 1) at ¶ 2. In other pleadings and at the initial status conference on January 23, 2007, counsel for Tushu made it clear that it "conceded that service was properly effected with respect to the original action." Transcript at 7. Although Tushu does not challenge the validity of the service of the original complaint and process, it does complain about insufficient service of the

subsequent Writs of Revival, the subjects of the Notices of Removal at Civil Action Nos. 06-1711 and 06-1712, and the validity of the underlying state court judgment because of the state court's purported lack of personal and subject matter jurisdiction.

Although Tushu's Notice of Removal of the "entire action" was not filed until December 28, 2006, Tushu argues that this Court should enlarge the time period for filing a notice of removal pursuant to 28 U.S.C. § 1441(d), which provides that the 30 day time limitations of 28 U.S.C. § 1446(b),[1] "may be enlarged at any time for cause shown" for removal of any civil action brought in a state court against a foreign state as defined in 28 U.S.C. § 1603(a).

The good cause Tushu offers to dramatically enlarge the time for removing "the entire action," as set forth in its Motion to Vacate the Default Judgment pursuant to Fed.R.Civ.P. 60(b)(4) (doc. no. 9), is that the judgment is null and void, for three reasons: (i) the state court lacked subject matter jurisdiction over claims against Tushu; (ii) the judgment was issued in violation of FSIA; and (iii) Pennsylvania lacked personal jurisdiction over Tushu.  Notice of Removal at ¶ 8.  Moreover, Tushu argues that the simultaneous removal of the two Writs of Revival filed in the Court of Common Pleas of Lawrence County are timely, and that it serves judicial economy and efficiency to enlarge the time for removal of "the entire action" so that not only the revival actions, but also "the entire action," can be considered together by one court, and that court should be the United States District Court for the Western District of Pennsylvania.

---

[1] "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

**Civil Action Nos. 06-1711 and 06-1712.** On December 28, 2006, Tushu filed Notices of Removal of two Writs of Revival that had been filed in the Court of Common Pleas of Lawrence County, respectively, at Civil Action No. 06-1711, a Writ of Revival filed on March 13, 2006, at that court's docket no. 10379-06, against Tushu and its successor Chinese-owned company, China National Cereals, Oils and Foodstuffs Corporation ("COFCO"); and at Civil Action No. 06-1712, a second Writ of Revival filed on May 17, 2006, at that court's docket no. 10723-06 against Tushu.

Pennsylvania's revival procedures were explained by the United States Bankruptcy Court for the Western District of Pennsylvania in *In re Zampatti*, 300 B.R. 415, 419-20 (Bankr. W.D.Pa. 2003) as follows:

> A judgment lien serves to prevent a debtor from subsequently encumbering or disposing of real property the debtor owns so as to divest the effect of the judgment. It also serves to prevent subsequent lienholders from taking action against the property to satisfy a debt owed to it by the debtor without first paying off prior liens. *Shearer v. Naftzinger*, 560 Pa. 634, 637, 747 A.2d 859, 861 (2000).
>
> Under the law of Pennsylvania, a judgment continues as a lien against real property for a period of five years, after which it automatically expires unless it is revived. *Mid-State Bank & Trust Co. v. Globalnet International, Inc.*, 710 A.2d 1187, 1190 (Pa.Super. 1998), aff'd, 557 Pa. 555, 735 A.2d 79 (1999). While a judgment lien may be revived even after it has expired, any priority it had against intervening liens prior to expiration is lost in the interim. *Shearer*, 560 Pa. at 637 n. 1, 747 A.2d at 860 n. 1.
>
> When a writ of revival issues, the Prothonotary is required to index it against each named defendant in the judgment index. Pa. R.C.P. 3027(a), 42 Pa.C.S.A. Once it is indexed, the writ becomes a lien upon all real property owned at that time by any defendant against whom the original judgment was entered. Pa. R.C.P. 3027(b), 42 Pa.C.S.A. The resulting lien continues for a period of five years from the date on which it was indexed. Pa. R.C.P. 3027(C), 42 Pa.C.S.A.
>
> A proceeding to revive the lien of a judgment may be commenced by filing

> with the prothonotary of the county in which the judgment was entered either a praecipe for a writ of revival or an agreement to revive the judgment. Pa. R.C.P. 3025, 42 Pa.C.S.A.

Moreover, a judgment lien merely "prevents a debtor from encumbering or conveying any real property he might own in such a way as to divest the effect of the judgment, [and] also prevent[s] later lienholders from satisfying their debt without first paying the earlier lien." *Mid-State Bank*, 710 A.2d at 1192 (quoting *In re Upset Sale*, 505 Pa. 327, 334, 479 A.2d 940, 943 (1984)). Thus, a writ of revival of a judgment lien does nothing more than preserve the judgment creditor's existing rights and priorities.

**Removal Jurisdiction Generally.**

Because federal district courts have limited jurisdiction, the removal statutes are strictly construed against removal. E.g., *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citations omitted); *LaChemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir. 1974). All doubts as to substantive and procedural jurisdictional prerequisites must be resolved in favor of remand. E.g., *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985); *Sterling Homes, Inc. v. Swope*, 816 F.Supp. 319, 323 (M.D.Pa. 1993). The removing defendant bears the heavy burden of persuading the court to which the state action was removed that it has jurisdiction under the removal statutes. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991); *Batoff*, 977 F.2d at 851.

Removal is strictly a statutory right and the procedures to effect removal must be followed. *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985). Removability is to be determined "only by reference to the plaintiff's initial pleadings," *Swope*, 816 F.Supp. at 323 (citations

omitted), at the time of filing the petition for removal. *Abels*, 770 F.2d at 29.

**Timeliness of Notice of Removal.**

Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within *thirty days after the receipt by the defendant*, through service or otherwise, *of a copy of the initial pleading* setting forth the claim for relief upon which such action or proceeding is based. . . .
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

As with all of the statutory prerequisites for federal courts' exercise of removal jurisdiction, the time limitations of section 1446(b) must be strictly observed, and the burden of establishing the timeliness of a removal petition is on the removing party. *Adelphia Fire Protection, Inc. v. Egner*, 2006 WL 1751780 at *2 (M.D.Pa. 2006) (citing, *inter alia*, *Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 732 (5th Cir. 1996); *International Ass'n of Entrepreneurs v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995), cert. denied, 516 U.S. 1072; *Lewis v. Louisville & Nashville R.R. Co.*, 758 F.2d 219 (7th Cir. 1985)); *Collins v. American Red Cross*, 724 F.Supp. 353, 359 (E.D.Pa. 1989). Tushu has not met its burden of proving the timeliness of any of the removal petitions.

**The "Entire Action."**

The notice to remove "the entire action" at Civil Action 06-1710 is obviously untimely,

as Tushu concedes by asking the Court to find good cause to enlarge the time to remove. The suit commenced in 1995, Tushu was served with original process and complaint, judgment was entered in August 2000, and the notice of removal filed in December, 2006 is "more than 1 year after commencement of the action" and more than "thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Thus, unless this Court enlarges the time *nunc pro tunc* pursuant to section 1441(d), that action cannot be removed to this Court.

Since a large part of Tushu's argument for good cause is tied into this Court's exercising removal jurisdiction over the revival proceedings initiated by the two Writs of Revival of judgment, and judicial inefficiency posed by adjudicating the revival actions in this Court while the underlying "entire action" -- and defendant's challenges thereto -- remains in the Court of Common Pleas of Lawrence County, the Court will examine the timeliness of the other two removals. If removal of the revival proceedings is untimely, there is no good cause to justify excusing the untimeliness of the removal of the "entire action" at Civil Action 06-1710, as the Court of Common Pleas is well qualified to hear and decide Tushu's challenges to the validity of the state court judgment on jurisdictional and other grounds.

Because the Court finds that revival proceedings in Pennsylvania are post judgment proceedings *ancillary* to the original lawsuit, not separate, independent civil actions, the filing of the Writs of Revival in the Court of Common Pleas did not trigger a new 30 day filing period for removal, and the removal of the writs was untimely.

**The Ancillary Proceedings.**

Post judgment actions, such as garnishment proceedings, may or may not be considered separate and independent actions, such that a new 30 day window opens for removal of those actions, or as an "ancillary" proceeding supplemental to the original action, such that the closing of the window for removing the original action forecloses removal of the ancillary proceeding. The United States Supreme Court has had several opportunities to consider whether a cause of action sought to be removed from a state to a federal court was ancillary, incidental, or auxiliary to the action in the state court, and so not removable.

Of the three leading cases, the Supreme Court held in the two earliest that the case could not be removed because of its relationship to the cause of action before the state court, but in the third case it held that the action was independent and hence properly removed. Compare *Bank v. Turnbull & Co.*, 83 U.S. 190 (1872) (where third party sought to intervene in execution of judgment against a debtor, claiming title to the property of debtor, and the action was removed to the federal court and there heard, Supreme Court reversed and remanded to the state court because the intervention proceedings was "auxiliary and incidental to the original suit") and *Barrow v. Hunton*, 99 U.S. 80 (1878) (proceeding directed toward nullification of state court judgment was a supplementary proceeding incident to the original suit and a continuation of it, rather than a separate suit, and thus should have been remanded to state court), with *Bondurant v. Watson*, 103 U.S. 281 (1880) (while the case between the purchaser of land from an heir and the representative of an heir had its origin in state court judgment, remand not appropriate because it was a new and independent suit between other parties upon new issues, in which the plaintiff sought to be protected against a judgment to which he was not a party).

More recently, a garnishment action filed in the United States District Court of Delaware seeking to enforce a New York state court money judgment against the garnishee of the judgment debtor, the Republic of Congo, was deemed a separate and independent action, and the state court's issuance of a writ of garnishment triggered a new 30 day period within which to remove that action. *Connecticut Bank of Commerce v. The Republic of Congo*, 440 F.Supp. 2d 346 (D.Del. 2006).

In *Connecticut Bank of Commerce*, District of Delaware Chief Judge Robinson surveyed the law of the Third Circuit on the nature and effect of proceedings being deemed "ancillary," explaining as follows:

> Section 1441(d) allows removal of "any civil action brought in a State court against a foreign state . . . ." 28 U.S.C. § 1441(d). "A suit which is merely ancillary or supplemental to another action cannot be removed from state to federal court." *Richmond v. Allstate Ins. Co.*, 624 F.Supp. 235, 236 (E.D.Pa.1985). The courts are divided over whether a garnishment action is a separate and distinct action for purposes of removal. FN5
>
> > FN5. The Eighth Circuit has held definitively that a garnishment action is a separate and distinct civil action for purposes of removal. *Randolph v. Employers Mut. Liability Ins. Co.*, 260 F.2d 461 (8th Cir.1958); *Stoll v. Hawkeye Cas. Co. Of Des Moines*, 185 F.2d 96 (8th Cir.1950). The Fifth Circuit has held that garnishment actions are not civil actions. *Murray v. Murray*, 621 F.2d 103 (5th Cir.1980).
>
> The Third Circuit has not addressed whether a garnishment action in state court is merely ancillary, or whether it is a distinct civil action. *Scanlin v. Utica First Ins. Co.*, 426 F.Supp.2d 243, 247 (M.D.Pa. 2006). District courts in the Third Circuit have approached the issue in various ways. Some courts in the Third Circuit have embraced a "flexible analysis" approach to determine whether garnishment proceedings have been properly removed by the garnishee and to determine whether the garnishment action is a separate and distinct civil action. *Id*. In addition, several flexible "ancillariness" tests have been articulated. *Id*.
>
> \*   \*   \*

In *Scanlin*, for example, the court posed three questions to determine whether a garnishment action is removable: (1) Was the garnishment proceeding substantially a continuation of the prior state court suit?; (2) Was the issue in the garnishment action completely separate from the central issue in the state court proceeding?; (3) Was the true defendant the same in the garnishment action? . . . The court in *Scanlin* found that the issue to be resolved in the garnishment action, whether defendant's parents' insurance policy would provide coverage for their son's judgment, was distinct from the issues of defendants' liability in the initial personal injury action. *Id*. at 250. In addition, the court found that defendant Brown was no longer a party in the garnishment litigation; only the garnishee UTICA was a named party, and defendant Brown had assigned his rights against UTICA to plaintiff. *Id*. Therefore, the court concluded that the garnishment action was a civil action appropriately removed. *Id*.

In *Graef v. Graef*, 633 F.Supp. 450 (E.D.Pa. 1986), the court applied an "independent federal analysis" in determining whether that particular garnishment action was a distinct civil action. *Id*. at 452. The district court considered the Pennsylvania state court's prior characterizations of garnishment actions as ancillary or independent, focusing on (1) whether an issue of fact might be joined, and (2) whether the proceeding is adversary, calling for a judgment independent of the underlying cause. *Id*. The district court concluded that Pennsylvania's garnishment statutes had been interpreted as involving separate and distinct civil actions. See *Shearer v. Reed*, 286 Pa.Super. 188, 428 A.2d 635 (1981) (the garnishment action subsequent to a tort judgment permitted a new claim for bad faith against the defendant's insurer).

In *Richmond v. Allstate Ins. Co.*, 624 F.Supp. 235, 236 (E.D.Pa.1985), the court considered whether it would be called upon to re-examine, in the garnishment action, issues of fact contested in and "inseparably tied to" the initial state action. *Id*. at 238. In its discussion of policies favoring remand, the court denounced relitigating the same issues of fact in federal court, bifurcating the trial by allowing execution of the judgment to take place in a different court, wasting federal resources in executing the judgment of a state court's action, and burdening the federal court with "minor" matters. *Id*. at 237. It concluded that plaintiff's garnishment action against defendant's insurer was supplemental to the original personal injury action because the insurer had raised the issue of payment in the state action, and it would be a "duplication of the function performed by the state court" to further determine whether defendant's insurer had previously paid the full proceeds permitted by defendant's policy. *Id*. at 237-38. In addition, the *Richmond* court foresaw that it would be called upon to determine the facts giving rise to the defendant's liability in order to ascertain the extent of coverage. *Id*. Therefore, the court

11

determined that the garnishment action was not a distinct civil action. *Id*. 440 F.Supp. 2d at 350-51 (footnotes and certain citations omitted).

The District Court concluded in *Connecticut Bank of Commerce* that the Delaware state court garnishment action was a separate and independent civil action because: (i) Delaware garnishment proceedings present a "separate process to which the original debtor is not a party and the purpose of which is to determine the legality of the attachment"; (ii) the garnishment action in that case presented several substantial "issues for resolution that are distinct from the original state action"; (iii) the "true" defendant in the garnishment action was the garnishee, a distinct entity from the Republic of Congo, which had defaulted and had not shown any interest in the outcome of the garnishment action; and (iv) the federal court would not have to engage in any "duplicate" function of the State courts in adjudicating this garnishment action because no issues of fact were litigated in the New York action, which resulted in a default judgment for the ROC.  440 F.Supp. 2d at 351-52.  Because the garnishment proceeding was removed within 30 days of the service of the writ of garnishment, the District Court of Delaware found the removal timely under 28 U.S.C. § 1446(b).

There is a substantial difference between garnishment proceedings, which, as we have seen, are sometimes deemed to be ancillary to the original underlying action and sometimes deemed to be separate and independent civil actions, and the Pennsylvania revival procedure. Applying the flexible analysis to the revival proceedings initiated by the writs of revival of judgment in this case, the Court does not hesitate to find such proceedings ancillary to the underlying action that resulted in the judgment entered in the Court of Common Pleas of Lawrence County in 2000, and thus the removal of both of the writs is untimely.

In *In re Raymark Indus., Inc.*, 238 B.R. 295 (Bankr. E.D.Pa. 1999), the United States Bankruptcy Court for the Eastern District of Pennsylvania addressed a similar issue. After a Pennsylvania Court of Common Pleas had issued a writ of revival of judgment directed toward the debtor, Raymark Industries, Inc., the Chapter 11 trustee filed a notice of removal and moved to transfer the proceeding to a Connecticut bankruptcy court, where it could be combined with all other matters at issue in the debtor's bankruptcy proceeding. Creditors moved for remand of the revival proceeding.

United States Bankruptcy Judge Thomas M. Twardowski, held that the revival proceeding was a "civil action" subject to removal under 28 U.S.C. § 1452, but that remand of the revival proceeding on equitable grounds was warranted. Section 1452(a) allows for removal of most "civil actions" to the federal district court for the geographical region in which the action is pending, provided the court has jurisdiction under 28 U.S.C. § 1334, which in turn, provides the federal court with jurisdiction over civil proceedings arising under title 11 of the Bankruptcy Code, or related to a title 11 case; section 1452(b) permits remand of cases so removed "on any equitable ground." *In re Raymark*, 238 B.R. at 297-98.

The Bankruptcy Court initially rejected the debtor's argument that because the Pennsylvania revival proceeding is administrative and/or procedural in nature, it does not constitute a "civil action" within the meaning of section 1452. *Id*. at 298. The Court recognized that there are post judgment proceedings, "such as garnishment actions, [that] are not viewed as civil actions in their own right because they are seen as being ancillary to another proceeding. . . ." [while other actions] "such as property tax assessments, may be classified as administrative or executive in nature and thus determined to be nonjudicial." *Id*. (citations omitted). To determine

13

whether an action will be deemed a "civil action" or an administrative/ executive action, the "method of analysis is a functional one, focusing on whether the attributes of a proceeding render it judicial in nature. . . . Broadly stated, "[t]he modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a [civil action]." *Id*. (citations omitted).

Applying the functional analysis to Pennsylvania's writ of revival proceedings, the Bankruptcy Court held:

> Viewing the revival proceeding from a functional perspective leads us to conclude that it bears sufficient indicia of a judicial contest to be classified as a civil action. The Pennsylvania Rules of Civil Procedure state that a writ of revival constitutes a complaint and initiates a proceeding to be governed by the Rules relating to civil actions. Pa.R.C.P. No. 3030(a). A defendant in such an action can thus file an answer or motion to dismiss, avail himself of discovery, file for summary judgment and ultimately have the matter resolved at an evidentiary hearing. Pa.R.C.P. Nos. 1001, 1017, 1028, 1035.2, 1038, 4001. We are aware that revival actions are subject to certain limitations. There are only a few recognized defenses that can be raised, *PNC Bank v. Balsamo*, 430 Pa.Super. 360, 369, 634 A.2d 645, 649 (1993) (the only defenses available in a revival proceeding are that the judgment does not exist, has been paid or has been discharged), and no counterclaims can be asserted. Pa.R.C.P. No. 3030(a). These limitations, however, do not destroy the essential character of the proceeding as a judicial contest.
>
> For these reasons, we conclude that the revival proceeding is a civil action which may be removed under section 1452(a).

*Id.* at 298-99.

It is the above quoted passage that Tushu relies on in arguing that the revival proceedings in this case are not mere ancillary proceedings, but are independent civil actions such that their removal to this Court was timely. However, as the Bankruptcy Court continued in *In re Raymark,* so too here: the "civil action . . . determination does not end our inquiry. . . ." *Id*. at

14

299. Instead, *In re Raymark* moved onto the next issue -- whether the proceeding should be remanded for equitable reasons under section 1452. In making that second determination, the Bankruptcy Court found that the revival proceeding was appended to the state court judgment and that the state court was better suited to handle that proceeding, with the following explanation:

> [R]emand on equitable grounds is warranted. Because the revival proceeding involves *simply an attempt to renew the pre-petition judgment lien according to Pennsylvania law*, and does not constitute an attempt to enforce or collect on the pre-petition judgment, we find that it will not have a significant impact upon the efficient administration of the bankruptcy estate. Furthermore, revival of the judgment is purely a matter of state law, and while it is a "related" proceeding under section 1334(b), the issues involved are remote to the issues truly at stake in a bankruptcy proceeding. In this respect, *we think the creditors' characterization of the revival proceeding as primarily procedural or administrative in nature is accurate. The subject matter of the revival proceeding is limited to the propriety of maintaining the judgment on the books.* No substantive matters pertaining to the validity of the judgment vis-a-vis the automatic stay or its eligibility for avoidance or subordination will be considered. *In addition, comity suggests that it is appropriate for the state court to determine the continuing vitality of judgments recorded on the court's own judgment index*. These factors furnish a substantial basis for remand.
>
> Finally, we are constrained to point out that remand entails no adverse consequences upon or prejudice to the Trustee. The limited purpose and scope of a revival proceeding necessarily demonstrates that *a judgment of revival has minimal preclusive effect*. Issues revolving around the automatic stay, subordination, or any other matter of bankruptcy law will remain open for litigation because they are beyond the scope of matters that can be decided in a revival proceeding. Pennsylvania courts are, moreover, loath to give preclusive effect to default revival judgments. *See Flagship First Nat'l. Bank v. Bloom*, 288 Pa.Super. 347, 431 A.2d 1082 (1981) (failure to defend revival proceeding was not a bar to filing a motion to open judgment asserting defense of accord and satisfaction).

*Id.* at 299.

This Court agrees with the Bankruptcy Court in *In re Raymark* that, despite having some

15

of the attributes of a civil action in Pennsylvania and being subject to the Pennsylvania Rules of Civil Procedure, a writ of revival simply initiates a limited proceeding designed to maintain or renew a state court judgment on its judgment index, that the revival proceeding is primarily procedural or administrative in nature, and that "comity suggests that it is appropriate for the state court to determine the continuing vitality" of its own judgments and any defenses that Tushu may raise. The revival proceedings involve the same parties as the underlying action, do not raise issues that are separate and apart from the issues that could have been raised as defenses in the underlying action, and are narrow in focus and design.

Because this Court deems the Writs of Revival filed in the Court of Common Pleas of Lawrence County to be initiation of post judgment proceedings that are ancillary to the underlying action and judgment, the filing of said writs does *not* trigger a new window of opportunity to remove the proceedings to federal court, nor does initiation of such plainly ancillary proceedings create good cause for enlarging the long-since-expired time period for removing the "entire action" to this Court.

Accordingly, the Court will grant plaintiff's motion to remand the three cases to the Court of Common Pleas of Lawrence County, and will do so by separate order of court.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: all counsel registered on ECF system